IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JAMIL MITCHELL, | ) | |
| | ) | 2:09-cv-02411-GEB-KJN |
|        Plaintiff, | ) | |
| | ) | |
|        v. | ) | <u>ORDER GRANTING AND DENYING IN</u> |
| | ) | <u>PART DEFENDANT'S MOTION FOR</u> |
| HFS NORTH AMERICA, INC., a | ) | <u>SUMMARY JUDGMENT</u> |
| California Corporation, | ) | |
| | ) | |
|        Defendant. | ) | |
| _____ | ) | |

Defendant moves for summary judgment, or in the alternative, for partial summary judgment on claims in Plaintiff's Complaint.[1] Plaintiff alleges multiple claims in his Complaint under California's Fair Employment and Housing Act, wrongful termination in violation of public policy, and intentional infliction of emotional distress. For the reasons stated below, Defendant's motion will be granted and denied in part.

## I. LEGAL STANDARD

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case." <u>Thrifty Oil Co. v. Bank of Am. Nat. Trust and</u>

---

[1] The movant identifies itself in the Notice of Motion as Defendant "HAVI Logistics North America, LLC (formerly known as HFS North America, LLC)." (Notice of Mot. for Summ. J., 1:20-24.)

Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.(internal quotation marks and citation omitted).

When the defendant is the moving party and is seeking summary judgment on one or more of a plaintiff's claims,

> [The defendant] has both the initial burden of production and the ultimate burden of persuasion on [the motion]. In order to carry its burden of production, the [defendant] must either produce evidence negating an essential element of the [plaintiff's claim] or show that the [plaintiff] does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. In order to carry its ultimate burden of persuasion on the motion, the [defendant] must persuade the court that there is no genuine issue of material fact.

Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000)(citations omitted). If the moving party satisfies its initial burden, "the non-moving party must set forth, by affidavit or as otherwise provided in [Federal] Rule [of Civil Procedure] 56, specific facts showing that there is a genuine issue for trial." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)(internal quotation marks and citation omitted). "[The] non-moving plaintiff cannot rest upon the mere allegations or denials of the adverse party's pleading but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial." Estate of Tucker ex rel. Tucker v. Interscope Records, Inc., 515 F.3d 1019, 1030 (9th Cir. 2008) (internal quotation marks and citation omitted).

1      Further, Local Rule 260(b) requires:

2          Any party opposing a motion for summary judgment or
           summary adjudication [to] reproduce the itemized
3          facts in the [moving party's] Statement of
           Undisputed Facts and admit those facts that are
4          undisputed and deny those that are disputed,
           including with each denial a citation to the
5          particular portions of any pleading, affidavit,
           deposition, interrogatory answer, admission, or
6          other document relied upon in support of that
           denial.

7

8   If the nonmovant does not "specifically . . . [controvert duly

9   supported] facts identified in the [movant's] statement of undisputed

10  facts," the nonmovant "is deemed to have admitted the validity of the

11  facts contained in the [movant's] statement." Beard v. Banks, 548 U.S.

12  521, 527 (2006). "Because a district court has no independent duty to

13  scour the record in search of a genuine issue of triable fact, and may

14  rely on the nonmoving party to identify with reasonable particularity

15  the evidence that precludes summary judgment, . . . the district court

16  . . . [is] under no obligation to undertake a cumbersome review of the

17  record on the [nonmoving party's] behalf." Simmons v. Navajo Cnty.,

18  Arizona, 609 F.3d 1011, 1017 (9th Cir. 2010) (internal quotation marks

19  and citation omitted).

20      Evidence must be viewed "in the light most favorable to the

21  non-moving party," and "all reasonable inferences" that can be drawn

22  from the evidence must be drawn "in favor of [the non-moving] party."

23  Nunez v. Duncan, 591 F.3d 1217, 1222-23 (9th Cir. 2010).

24  ///

25  ///

26  ///

27  ///

28  ///

## II. UNCONTROVERTED FACTS[2]

Defendant hired Plaintiff as a Class B delivery driver at its Sacramento facility in April 2006. (Def.'s Statement of Undisputed Facts ("SUF") ¶ 1.) Plaintiff was promoted to a Class A delivery driver in 2007, when he obtained his Class A license. Id. ¶ 2.

As a Class A delivery driver, Plaintiff injured his right wrist while unloading milk crates from one of Defendant's trucks in March 2007. Id. ¶ 4. After this injury, Plaintiff performed light-duty work in a warehouse and as a "yard hostler." Id. ¶ 7. While Plaintiff worked in these light-duty positions, he was paid the same hourly rate he received as a Class A delivery driver, even though those occupying the positions were typically paid less. Id. ¶ 8.

Plaintiff was released to full duty without restrictions in September 2007. Id. ¶ 9. After this release, Defendant told Plaintiff he needed to return to his Class A delivery driver position, but Plaintiff preferred to stay in the yard hostler position because it worked better with his personal schedule. Id. ¶ 13. Defendant gave Plaintiff the choice of returning to the Class A delivery driver position or remaining in the yard hostler position, but at its lesser rate of pay. Id. ¶¶ 14-15. Plaintiff chose to return to his Class A delivery driver job. Id. ¶ 15.

Plaintiff subsequently injured his back while working for Defendant in December 2007. Id. ¶ 16. After this injury, Defendant permitted Plaintiff to work as a "Flying Foods run" driver, pursuant to

---

[2] Plaintiff states a number of Defendant's statements of undisputed facts are "disputed." However, except as discussed below, Plaintiff does not provide sufficient evidence to controvert Defendant's facts.

Plaintiff's request. Id. ¶ 17. Plaintiff remained in this position through the remainder of his employment with Defendant. Id. ¶ 18.

Plaintiff submitted a worker's compensation claim for his right wrist injury. (Mitchell Dep. 56:15-58:22, Feder Decl., Ex. A.) Dr. John Branscum performed a Basic Orthopedic Qualified Medical Evaluation ("QME") of Plaintiff on March 6, 2008, in connection with Plaintiff's worker's compensation claim. (John L. Brancom's QME Report ("QME Report") 1, Decl. of Daniel Feder, Ex. D.) Dr. Branscum opined that as a result of Plaintiff's occupational injury, he "developed a traumatic ganglion cyst on the dorsoradial aspect of his right hand that continues to be symptomatic," that Plaintiff's wrist condition "[was] permanent and stationary as of the date of [the QME]" and that Plaintiff "has a disability to his right hand that precludes fine manipulation and repetitive firm gripping/grasping." Id. at 7-8. Although Dr. Branscum opined Plaintiff suffered from permanent restrictions, Dr. Branscum stated in the "Summary & Discussion" portion of Plaintiff's QME Report that he told Plaintiff, "he could continue to work at full duty without restrictions." Id. at 8. The "Job Description" and "Work Record Since the Injury" portions of Plaintiff's QME Report indicate that when Dr. Branscum prepared the report, he knew Plaintiff worked as a truck driver. Id. at 2-3.

Defendant terminated Plaintiff's employment on May 8, 2008, after learning that "Plaintiff had received a permanent medical restriction." (Decl. of Curtis Striggow ("Striggow Decl.") ¶¶ 2, 4.)

### III. EVIDENTIARY OBJECTIONS

Defendant objects to the admission of Dr. Branscum's QME Report on hearsay and authentication grounds, arguing "Plaintiff has failed to attach an affidavit or deposition testimony from Dr. Branscum

indicating that he wrote the [the report;] . . . therefore [it] has not been properly authenticated[;]" and "given that it is submitted for the truth of the matter asserted by an out of court declarant, and does not qualify as non-hearsay or fit into a hearsay exception, [the report] constitutes inadmissible hearsay." (Def.'s Objections to Evidence ("Obj.") 2:18-3:3.)[3]

Plaintiff counters that the report is admissible since the final page of the report "is [Dr. Branscum's] Declaration" which "indicat[es] Dr. Branscum wrote the [report,]" and the "Court need not decide whether [the report] itself is admissible [since i]t is sufficient that the contents of the [report] could be made us[e] of at trial[.]" (Pl.'s Resp. to Def.'s Obj. 2:13-3:2.)

Defendant replies that "Dr. Branscum's proffered [declaration] does not cure the fact that [the report] has not been properly authenticated by the individual offering it as evidence, [through Plaintiff's counsel,] Mr. Feder." (Def.'s Reply to Plf.'s Resp. to Obj. 2:4-6.) Defendant further argues: "[F]or [the report] to be admissible, Mr. Feder would need to have either written, signed, or used the document, or saw others do so." Id. 2:15-17. This argument is not considered since Defendant did not raise it in its Objections to Evidence, and Defendant has not shown that it was reasonably unforeseeable. See Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007)(stating a "district court need not consider arguments raised for the first time in a reply"); see also Litton Indus., Inc. v. Lehman

_____

        [3]     Defendant also objects to the Employment Development Department's June 9, 2008 Notice of Determination/Ruling, on which Plaintiff relies in support of his Opposition. (Obj. 3:5-17.) This evidentiary objection is not decided, however, since the document was not considered in ruling on Defendant's motion.

1  Bros. Kuhn Loeb Inc., 767 F. Supp. 1220, 1235 (S.D.N.Y. 1991)(stating

2  "reply papers may properly address new material issues raised in the

3  opposition papers so as to avoid giving unfair advantage to the

4  answering party who took it upon himself to argue those previously

5  unforseen issues"), rev'd on other grounds, 967 F.2d 742 (2d Cir. 1992).

6         Unauthenticated documents "cannot be considered in a motion

7  for summary judgment." Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir.

8  2002). Authentication "is satisfied by evidence sufficient to support a

9  finding that the matter in question is what its proponent claims." Id.

10 (internal quotation marks and citation omitted). For example, "[a]

11 document can be authenticated . . . by a witness who wrote it, signed

12 it, used it, or saw others do so." Id. at 774 n.8.

13        The final page of the QME Report includes a paragraph, titled,

14 "Disclosures and Declarations," which states:

15        I performed all medical aspects of this
          document. . . . I declare under penalty of perjury
16        that the information contained in this report and
          its attachments, if any, is true and correct to the
17        best of my knowledge and belief, except as to
          information that I have indicated I received from
18        others. As to that information, . . . the
          information accurately describes the information
19        provided to me and, excepted as noted herein, that
          I believe to be true.
20

21 (Basic Orthopedic Qualified Medical Eval. 10.) Therefore, Defendant's

22 authentication objection is overruled.

23        Further, since Dr. Branscum signed the QME Report under

24 penalty of perjury as prescribed in 28 U.S.C. § 1746(2), and "the facts

25 underlying the [report are] of a type that would be admissible as

26 evidence," the QME Report itself is not objectionable at the summary

27 judgment stage on hearsay grounds. Hughes v. U.S., 953 F.2d 531, 543

28 (9th Cir. 1992). "Rule 56 permits the use of [declarations] in

7

evaluating a motion for summary judgment. While the facts underlying the [declaration] must be of a type that would be admissible as evidence, the [declaration] itself does not have to be in a form that would be admissible at trial." Id.

## IV. DISCUSSION

### A.   Disability Discrimination

Defendant seeks summary judgment on Plaintiff's disability discrimination claim, which Plaintiff alleges under the California Fair Employment and Housing Act ("FEHA"), CAL. GOV'T CODE § 12940, arguing Plaintiff has not established he is "qualified to perform the essential functions of his job, with or without reasonable accommodation," and "Plaintiff cannot show that he was terminated because of his disability." (Def.'s Mem. of P.&A. ("Mot.") 6:17-20, 7:1-4. 7:20-21.) Defendant also argues, "[e]ven if Plaintiff is able to establish a *prima facie* case of discrimination, Defendant had a non-discriminatory reason for terminating Plaintiff, which Plaintiff cannot show was a pretext for discrimination." Id. 8:3-8. Plaintiff counters, *inter alia*, that Defendant "terminated [his] employment based upon his physical condition, and contrary to [his medical examiner's] recommendation that [Plaintiff] could continue to work at full duty without restrictions[;]" and contends "there is a genuine dispute regarding whether [Defendant] unlawfully discriminated against [Plaintiff] based upon his disability." (Pl.'s Opp'n ("Opp'n") 6:17-18, 7:25-26.)

"When [considering] motions for summary judgment in employment discrimination cases arising under state law, federal courts sitting in diversity must apply the McDonnell Douglas burden-shifting scheme as a federal procedural rule." Zeinali v. Raytheon Co., 636 F.3d 544, 552 (9th Cir. 2011)(internal quotation marks and citation omitted).

> In order to defeat a defendant's motion for summary judgment on a discrimination claim: The employee must first establish a prima facie case of discrimination. If he does, the employer must articulate a legitimate, nondiscriminatory reason for the challenged action. Finally, if the employer satisfies this burden, the employee must show that the reason is pretextual[,] either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

Id. (internal quotation marks and citation omitted). "At summary judgment, the degree of proof necessary to establish a prima facie case is 'minimal and does not even need to rise to the level of a preponderance of the evidence.'" Jefferson v. Fed. Express Corp., No. C 09-04235 JSW, 2010 WL 3630984, at *3 (N.D. Cal. Sept. 14, 2010)(quoting Lyons v. England, 307 F.3d 1092, 1112 (9th Cir. 2002)).

To establish a prima facie case of disability discrimination under FEHA, Plaintiff must show: "(1) he suffers from a disability; (2) he is otherwise qualified to do his job; and, (3) he was subjected to adverse employment action because of his disability." Faust v. Calif. Portland Cement Co., 150 Cal. App. 4th 864, 886 (2007). Plaintiff has the initial burden of demonstrating "that he or she is a qualified individual . . . [,] (i.e., that he or she can perform the essential functions of the job with or without reasonable accommodation)." Green v. State, 42 Cal. 4th 254, 260 (2007).

The essence of Defendant's motion on Plaintiff's disability discrimination claim is its contention that Plaintiff's permanent medical restrictions prevented him from performing the essential duties of his job with or without a reasonable accommodation. Defendant argues it terminated Plaintiff's employment because his permanent medical restrictions prevented him from shifting gears and gripping and grasping

the steering wheel, which are essential functions of Plaintiff's original Class A delivery driver position, his current Flying Foods run position, and any other available job. (Mot. 7:1-19.)

Defendant relies upon the Declaration and Supplemental Declaration of Curtis Striggow, its former Operations Manager for its Sacramento facility, as support for its assertion that Plaintiff's medical restrictions prevented him from driving any truck for Defendant. Mr. Striggow avers that in early May 2008, "Defendant learned from its insurance carrier . . . that Plaintiff had received a permanent medical restriction precluding him from engaging in fine manipulation and/or repeated firm gripping and grasping with his right hand;" and that "[i]n order to drive any of Defendant's trucks, [Plaintiff] would necessarily have to be able to repeatedly firmly grip and grasp the steering wheel and the gear shift to avoid imposing a danger to himself or to others." (Supp. Decl. of Curtis Striggow ¶ 2.) Mr. Striggow further declares that Defendant "explored every option in an attempt to find a vacant position Plaintiff could perform with his permanent restrictions," but "no such position was available." Id. at ¶ 3.

Plaintiff admitted in his deposition that his permanent restrictions were the stated reason for his termination, and that driving any commercial vehicle for Defendant requires him to both grip the steering wheel and shift the manual gears. (Mitchell Dep. 55:9-56:7, 86:1-89:2, 91:11-23, Feder Decl., Ex. A.) However, Plaintiff testified during his deposition that his restrictions do not prevent him from performing these tasks. Id. at 133:20-134:24.

Defendant terminated Plaintiff's employment on May 8, 2008, approximately two months after Plaintiff's March 6, 2008 QME. The evidence showing that Plaintiff was able to work as a driver until his

termination, despite the referenced restrictions, supports drawing the inference that [Plaintiff] could perform the essential functions of his Flying Foods run position. Further, although Dr. Branscum opined Plaintiff suffered from permanent restrictions, Dr. Branscum told Plaintiff, "he could continue to work at full duty without restrictions." (QME Report 8.) It can be reasonably inferred from this evidence that Dr. Branscum opined Plaintiff could continue working as a driver despite his permanent restrictions. Therefore, a genuine issue of material fact exists on the issue of whether Plaintiff could perform the essential functions of his job.

Further, since Defendant terminated Plaintiff "because [it] believe[d] that [Plaintiff's] disability prevented him . . . from performing essential functions of [his] job and there were no other jobs available to accommodate [Plaintiff]," a genuine issue of material also exists on the question whether Plaintiff was terminated because of his disability. Wilson v. Sears, Roebuck & Co., No. 08cv2061-L(JMA), 2011 WL 1119071, at * 6 (S.D. Cal. Mar. 28, 2011)(citing Nadaf-Rahrov v. Neiman Marcus Grp., Inc., 166 Cal. App. 4th 952, 963 (2008))(stating "when an employer takes an adverse action because he or she believes that the employee's disability prevented him or her from performing essential functions of the job and there were no other jobs available to accommodate the employee, the action is taken because of a disability for purposes [of] disability discrimination").

For the stated reasons, Defendant's motion for summary judgment on Plaintiff's disability discrimination claim is denied.

**B.  Disability Harassment**

Defendant also seeks summary judgment on Plaintiff's FEHA disability harassment claim, arguing "[Plaintiff] readily admitted

1  [during his deposition] that he could not recall being subjected to any

2  offensive conduct based on his medical condition." (Mot. 9:4-6.)

3  Plaintiff rejoins in his opposition brief that he does not oppose

4  Defendant's motion on this claim "in light of his deposition testimony

5  that he was not harassed based on any disability or medical condition."

6  (Opp'n 7, n.2.) Therefore, Defendant's motion for summary judgment on

7  Plaintiff's harassment claim is granted.

8      C.   **Failure to Engage in the Interactive Process and Failure to**

9           **Accommodate**

10         Defendant also seeks summary judgment on Plaintiff's FEHA

11  claims in which Plaintiff alleges Defendant failed to engage in the

12  interactive process and failed to reasonably accommodate him, as

13  proscribed in California Government Code section 12940, subsections (m)

14  and (n). Defendant argues since "Plaintiff received permanent medical

15  restrictions precluding him from performing the essential functions of

16  his job or any other available position[,]" it had no duty to

17  accommodate Plaintiff or engage in an interactive process to determine

18  effective reasonable accommodations. (Mot. 9:15-19, 10:18-23, 11:10-14,

19  11:24-26, 12:13-16, 12:18-24.) Defendant further contends, "[a]n

20  employer is not required to continue engaging in the interactive process

21  once it becomes apparent that doing so would be futile." (Mot. 10:25-

22  11:2.) However, a genuine issue of material fact exists on the issue

23  whether Plaintiff could perform the essential functions of the job he

24  held at the time of his termination. Therefore, this portion of

25  Defendant's motion is denied.

26      D.   **Retaliation**

27         Defendant also seeks summary judgment on Plaintiff's FEHA

28  retaliation claim, arguing, *inter alia*, "Plaintiff did not engage in

1  any protected activity[.]" (Mot. 13:25-28.) Plaintiff rejoins in his
2  opposition brief that he does not oppose this portion of Defendant's
3  motion "in light of his deposition testimony that he did not complain
4  regarding differential treatment based on his disability." (Opp'n 11,
5  n.3.) Therefore, this portion of Defendant's motion is granted.

6        **E.   Failure to Prevent Harassment, Discrimination or Retaliation**

7        Defendant also seeks summary judgment on Plaintiff's FEHA
8  claim in which Plaintiff alleges Defendant failed to prevent
9  discrimination, harassment or retaliation, arguing "[a] defendant cannot
10 be liable for failing to prevent discrimination, harassment, or
11 retaliation that did not occur." (Mot. 13:2-3.) Defendant also argues
12 "private litigants can no longer sustain claims for failure to prevent
13 discrimination, harassment, and/or retaliation," since "the California
14 Fair Employment and Housing Commission ("Commission") recently held in
15 a precedential decision that claims for failure to prevent
16 discrimination, harassment, or retaliation are exclusively the province
17 of the Department of Fair Employment and Housing[.]" <u>Id.</u> at 13:4-11.
18 Plaintiff rejoins in his opposition brief that he "voluntarily omit[ted]
19 argument on [this claim] in light of [the Commission's precedential
20 decision]." (Opp'n 11, n.3.)

21       Defendant has not provided any authority to support its
22 argument that Plaintiff lacks standing, as a private litigant, to bring
23 a failure to prevent harassment, discrimination or retaliation claim.
24 The Fair Employment and Housing Commission decision on which Defendant
25 relies, <u>Dep't of Fair Emp't & Hous. v. Lyddan Law Grp., LLP</u>, "h[eld] the
26 [Department of Fair Employment & Housing ("DFEH")] may prosecute a . .
27 . failure to take all reasonable steps [to prevent discrimination or
28 harassment claim] as an independent statutory violation of Government

1 Code section 12940, subdivision (k)[, without an underlying finding of

2 discrimination or harassment,] with the important limitation that . . .

3 such a cause of action [does not] exist[] as an independent claim for

4 private litigants." <u>Dep't of Fair Emp't & Hous. v. Lyddan Law Grp., LLP</u>,

5 No. E-200607-A-1082-00-rs, 2010 CAFEHC LEXIS 4, at *34 (Cal. F.E.H.C.

6 Oct. 19, 2010). The referenced holding is distinguishable from this

7 case, where Plaintiff is not prosecuting a "stand alone" claim for

8 failure to prevent harassment or discrimination; i.e. disability

9 discrimination remains as an underlying basis for the claim.[4]

10       For the stated reasons, this portion of Defendant's motion is

11 denied.

12    **F.    Wrongful Termination in Violation of Public Policy**

13       Defendant seeks summary judgment on Plaintiff's wrongful

14 termination in violation of public policy claim, arguing that "[b]ecause

15 Plaintiff's underlying [FEHA] discrimination, harassment and retaliation

16 claims fail, [this claim] must fail as a matter of law." (Mot. 15:7-8.)

17 Plaintiff counters, Defendant "wrongfully terminated [him] based on his

18 physical disability," and "disability discrimination [in violation of

19 what FEHA proscribes] supports [his claim for wrongful termination in

20 violation of public policy]." (Opp'n 11:16-18.)

21       "To state a prima facie wrongful discharge claim, a plaintiff

22 must establish: (1) an employer-employee relationship; (2) that

23 plaintiff's termination was a violation of public policy; (3) causation;

24 and (4) damages." <u>Ujagar v. Campbell's Soup Co.</u>, No. CIV. S-05-674

25 LKK/DAD, 2006 WL 3762106, at * 6 (E.D. Cal. Dec. 20, 2006)(citing <u>Holmes</u>

26

---

27       [4]   Summary judgment is denied on Plaintiff's disability
discrimination claim for the reasons set forth in section III (A),
28 above. Therefore, disability discrimination remains as an underlying
basis for this claim.

1  v. General Dynamics Corp., 17 Cal. App. 4th 1418, 1426 n.8 (1993)).

2  Disability discrimination in violation of FEHA is a "violation of public

3  policy" upon which a common law tort claim for wrongful discharge can be

4  based. City of Moorpark v. Sup. Ct., 18 Cal. 4th 1143, 1159-61 (1998)).

5       Since "summary judgment [is denied] as to [Plaintiff's FEHA

6  disability] discrimination claim[,] . . . summary judgment as to the

7  wrongful termination [in violation of public policy] claim is also

8  inappropriate." Ujagar, 2006 WL 3762106, at *7. Therefore, this portion

9  of Defendant's summary judgment motion is denied.

10      **G.   Intentional Infliction of Emotional Distress**

11      Defendant also seeks summary judgment on Plaintiff's

12  intentional infliction of emotional distress ("IIED") claim, arguing,

13  inter alia, that "Plaintiff has not presented any conduct [by Defendant]

14  that rises to the level of extreme and outrageous conduct." (Mot. 16:23-

15  24.) Plaintiff counters that "discriminatory discharge . . . is

16  outrageous, because it is not merely rude or insulting, but beyond all

17  bounds of decency." (Opp'n 12:17-19.)

18      "Under California law, to make out a cause of action for

19  intentional infliction of emotional distress, a plaintiff must show, in

20  relevant part, that the defendant engaged in extreme and outrageous

21  conduct that exceeded the bounds of what is generally tolerated in a

22  civilized society." Braunling v. Countrywide Home Loans, Inc., 220 F.3d

23  1154, 1158 (9th Cir. 2000)(citation omitted). "Terminating an employee

24  for improper or discriminatory reasons . . . is insufficiently extreme

25  or outrageous to give rise to a claim for intentional infliction of

26  emotional distress." Walker v. Boeing Corp., 218 F. Supp. 2d 1177, 1190

27  (C.D. Cal. 2002)(citing Janken v. GM Hughes Elec., 46 Cal. App. 4th 55,

28  80 (1996)); see also Metoyer v. Chassman, 248 Fed. Appx. 832, 835 (9th

Cir. 2007)(stating Plaintiff's "allegations that she was improperly terminated [for discriminatory and retaliatory reasons] simply do not make out a claim of intentional infliction of emotional distress").

Plaintiff argues his termination was "outrageous" because it was discriminatory. However, he has not presented any evidence that his termination was accompanied by any conduct sufficient to serve as the predicate for an IIED action. Therefore, Defendant's motion for summary judgment on Plaintiff's IEID claim is granted.

## V. CONCLUSION

For the stated reasons, Defendant's motion for summary judgment is GRANTED and DENIED in part.

Dated:  July 19, 2011

GARLAND E. BURRELL, JR.
United States District Judge